UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MALINEE YINDEE, )
)
              Plaintiff, )
)
vs. )   04 C 0730
)
COMMERCE CLEARING HOUSE, INC., )
)
             Defendant. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

    This matter comes before the court on the motion of Defendant CCH, Inc. for summary judgment of the complaint of Plaintiff Malinee Yindee. For the reasons set forth below, the motion is granted.

### **BACKGROUND**

    Yindee is a former employee of CCH at its facility in Riverwoods, Illinois. Her employment extended from January 17, 2000, until January 17, 2003. Sometime in 2000, Yindee was diagnosed with endometrial cancer; she underwent a complete hysterectomy to treat her condition. In approximately February 2002, as a result of periodic unexplained bouts of dizziness (intermittent idiopathic vertigo), her physician instructed her to stop driving while they continued.

Although her job duties as a programmer analyst in CCH's human resources department did not require her to drive, Yindee commuted from her home in Rockford by car. In late March 2002, after her doctor instructed her to stop driving, she requested and received permission to telecommute (i.e., work from home) for a three-week period. At CCH, telecommuting is a voluntary arrangement that may be terminated at any time by either CCH or the employee. The responsibilities and duties of employment are the same whether an employee works on-site or telecommutes.

The telecommuting application Yindee submitted specified that she would work online (i.e., while remotely connected to CCH's network) for 5-6 hours per day. The remainder of her 8-hour workday could be spent offline.[1] After the initial three-week period, Yindee continued to telecommute once or twice a week until July 1, when Ken Tennant, Yindee's supervisor, terminated her telecommuting privilege citing performance problems. Rather than addressing the issue with Tennant, Yindee complained to Zrinka Allen, a human resource department employee who reported to the same supervisor as Tennant did, Sue Mullin. This in turn sparked several meetings between various combinations of Yindee, Allen, Tennant, and Mullin. In early August,

---

[1] We note that the Telecommuting Agreement, which purports to fully define the terms of the telecommuting relationship, states only that Yindee will work from 8 am until 4 pm, with no designation of whether she would spend those hours online or offline. Despite this, CCH seems to adopt the breakdown listed in the application as controlling Yindee's telecommuting activities.

Tennant again told Yindee that her job performance was becoming unsatisfactory and that she needed to complete outstanding projects. On August 15, 2002, Yindee filed a written grievance against Tennant for terminating her telecommuting.

From early August into September, Tennant continued to find fault with Yindee's job performance. On September 17, 2002, Yindee filed a charge with EEOC, alleging Tennant was discriminating against her because of her race, sex, religion, national origin, and age. Nine days later, on a Thursday afternoon, Tennant and Allen met with Yindee regarding the ongoing issues Tennant had identified in her job performance. At that meeting, Yindee was given a verbal warning about addressing these issues and was informed that she would receive a written warning the following week. She was also told that she would be placed on a performance improvement plan. Although the record is not entirely clear on what Yindee was told, it is apparent that the problems were described in some detail.

The following day, a Friday, Yindee contacted Tennant and informed him that she would be taking off the next Monday and Tuesday from work. On Monday, she remitted a note from her physician recommending that she take a short leave of absence. She was permitted to take leave pursuant to the Family Medical Leave Act ("FMLA") from September 30, 2002, until January 2, 2003.

On December 12, 2002, while still on FMLA leave, Yindee filed another charge with the EEOC, this time claiming discrimination on the basis of disability. She specified that the disability in question was her endometrial cancer.

On January 2, Yindee returned to work. That day, Tennant gave her a written copy of her performance improvement plan. It informed her that she was on a 30-day probation period, during which she was to improve the quality of her work, her knowledge of software used at CCH, problem-solving skills, her manner of requesting paid time off, and her behavior toward coworkers and Tennant. She was informed that repetition of the identified behavior within the 30-day period could lead to action including termination.

Two weeks later, Yindee and Tennant engaged in an email exchange regarding one of Yindee's ongoing projects. Yindee indicated that she was having problems with the software she used to complete the project and asked Tennant if she needed his approval before contacting the software company directly. In examining the specific problems she identified, Tennant discovered that they were caused by Yindee's errors, rather than bugs in the underlying program. Because he had specified this type of activity as indicative of deficient problem-solving skills in the past, he concluded that Yindee had not complied with the requirements of the performance improvement plan.

He met with Allen and Mullin, and the decision was made to terminate Yindee's employment. The decision was carried out the following day, January 17.

On January 23, Yindee filed another charge with EEOC and IDHR, claiming that her termination was in retaliation for her December 12 charge of disability discrimination. After receiving a right-to-sue letter, she filed this case, alleging violations of the ADA, the FMLA, Title VII, and the Employee Retirement Income Security Act ("ERISA").

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most

favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). With these principles in mind, we turn the motion before us.

## DISCUSSION

**A. Unlawful Discrimination**

The first counts of Yindee's complaint contend that CCH's conduct toward her during 2002 and 2003 violated the Americans with Disabilities Act ("ADA"). The pertinent provision prohibits employers from discriminating against an employee who is a "qualified individual with a disability" because of that person's disability. 42 U.S.C. § 12112(a). The ADA defines "disability" as an impairment, either physical or mental, that substantially limits one or more of the employee's major life activities. 42 U.S.C. § 12102(2)(A).[2]

Yindee focuses her attention on whether a jury could perceive CCH's actions toward her as being discriminatory and rooted in her medical woes. However, this puts

---

[2] The statute provides that a disability can be shown in two other ways. Although Yindee mentions the other avenues in passing, because she does not properly develop these contentions, we will not consider them. See Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005).

the cart before the horse. First we must determine whether her difficulties rise to the level of being a disability under the ADA. If they do not, the statute imposed no obligations on CCH.

Yindee advances two possible candidates for a disability: the endometrial cancer for which she underwent treatment in 2000 and the dizzy spells she experienced in 2002.

Cancer can be a disability for ADA purposes in some circumstances. However, in Yindee's case, there is no evidence that she still had endometrial cancer in the spring and summer of 2002. She had undergone a complete hysterectomy, which presumably removed all of her endometrial tissue, in 2000. There is no evidence in the record that she experienced any recurrence, and Yindee could not be disabled by an impairment she did not have. The other contender, Yindee's vertigo, does not qualify as a disability under the ADA because it does not substantially limit her in a major life activity. The sole activity she identifies as being limited by her vertigo is her driving. Driving in and of itself is not of central importance to daily life, on par with activities such as seeing, hearing, or working in a broad class of jobs, so it is not a major life activity as that term is used in an ADA context. See Toyota Motor Mfg. v. Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 691 (2002).

With no showing that she suffers from a qualifying disability, Yindee's claim of discrimination under the ADA does not even get out of the gate. Moreover, there is no legal obligation on an employer to accommodate a condition that is not a disability. Because Yindee has not shown herself to be disabled and thus protected by the ADA, CCH is entitled to summary judgment on Counts I and II of the complaint.

**B. Retaliation**

The remaining counts of Yindee's complaint sound in retaliation under Title VII,[3] the ADA, the FMLA, and ERISA. Although Yindee treats these causes of action separately in her complaint, she combines her response to CCH's challenges to them into a single argument. We shall consider them in a like manner.

---

[3] Count III of Yindee's complaint refers to retaliation for challenging activities allegedly violative of Title VII. However, her January 23, 2003, EEOC charge refers only to her December 12 EEOC charge of disability discrimination as leading to the alleged retaliation. The Title VII bases Yindee advanced in September (race, sex, religion, national origin, and age) are not reasonably related to the disability discrimination she advanced as the foundation of her January 2003 retaliation claim. Arguably, the January charge does not embrace conduct occurring prior to December 12; if that is so, it is not properly found in the complaint. See Haugerud v. Amery Sch. Dist., 259 F.3d 678, 689 (7th Cir. 2001). If the complaint were limited to acts described in Yindee's December and January charges, events occurring before December 12 could not be considered in conjunction with the retaliation claim; an employer cannot retaliate against a charge that has not been filed. See Hottenroth v. Village of Slinger, 388 F.3d 1015, 1029 (7th Cir. 2004). However, since CCH has not quarreled with the invocation of Title VII or the inclusion of earlier actions, neither do we.

A plaintiff claiming unlawful retaliation by an employer can proceed under either a direct or an indirect method of proof when faced with the employer's motion for summary judgment.  Rogers v. City of Chicago, 320 F.3d 748, 753–54 (7th Cir. 2003).  Under the direct method, Yindee must put forth direct or circumstantial evidence that she engaged in protected activity and as a result suffered the adverse employment actions of which she complains.  Id.; Stone v. City of Indianapolis Publ. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002).

It is undisputed that Yindee does not have direct evidence that CCH took any of the negative actions she identifies as a result of her challenges to the legality of Tennant's actions.  She contends that the sum total of the events from July 2002 until her termination constitute circumstantial evidence sufficient to permit a factfinder to conclude that CCH acted in retaliation. While circumstantial evidence can undoubtedly allow a plaintiff to proceed under the direct method, the presence of some evidence does not automatically create a triable issue of fact.  Rather, a plaintiff must advance circumstantial evidence that points directly to an impermissible reason for the employer's act.  See Adams v. Wal-mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003). The evidence to which Yindee points includes Tennant's criticisms of her work performance, suspension of her email and other network access while she was on leave, the hiring of another person in her work group, and the close temporal proximity of the

events at issue. Even when considered in a light most favorable to her, these instances do not lead inexorably to a conclusion that CCH retaliated against her once she began filing grievances and EEOC charges. Thus, Yindee must proceed under the indirect method if she is to stave off summary judgment for CCH on her retaliation claims. See id.

The indirect method of proof incorporates the well-traveled McDonnell-Douglas burden-shifting approach. Here, Yindee must show that after engaging in the conduct she claims touched off CCH's wrath, she and no other similarly situated employee who did not engage in similar conduct, was subjected to adverse employment action even though she was satisfactorily carrying out her employment duties. Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002). CCH must then counter her allegations with a noninvidious reason for the actions it took. Id. If it can, Yindee must rebut that showing with evidence that CCH's proffered reason is a pretext designed to cover its actual, retaliatory motives. Mannie v. Potter, F.3d 977, 984 (7th Cir. 2005).

The undisputed facts of this case show that Yindee did suffer adverse employment action after she filed her internal grievance and her first two EEOC charges. On the other two factors of her prima facie case, Yindee faces obstacles. With respect to a similarly situated employee, Yindee identifies her coworker David

Goodspeed. To be similarly situated, Goodspeed must be directly comparable in all material respects to Yindee. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). However, Yindee does not provide any illumination of Goodspeed's work situation or background that would allow us to make a meaningful assessment of the similarities between the two.

The final element of her prima facie case is intertwined with the second and third stages of the burden-shifting test. Yindee claims that she was performing satisfactorily; CCH contends that she was not. If those were the only considerations, summary judgment would not be a proper vehicle for disposition of this case. However, though Yindee vehemently disagrees with CCH's contentions regarding her performance, at best the arguments she advances support a conclusion that CCH was mistaken in its assessment, not that its reasons were fake or phony. See Walker v. Mueller Industries, Inc., 408 F.3d 328, 333 (7th Cir. 2005). Because Yindee cannot show either the second prong of her prima facie case or that CCH acted out of pretext, CCH is entitled to summary judgment of her retaliation claims.

**CONCLUSION**

Based on the foregoing analysis, CCH's motion for summary judgment is granted.

/s/ Charles P. Kocoras
Charles P. Kocoras
Chief Judge
United States District Court

Dated:    June 16, 2006